LYONS et al., Appellants, v. ARCHER et al., (Farmers' State Bank of Rockham, Intervener), Respondents.

(143 N. W. 287.)

1.   **Appeal—Evidence, Admission of—Harmless Error.**

Admission of incompetent and immaterial evidence, being harmless to appellants, is not ground for reversal.

2.   **Appeal—Harmless Error—Admission of Evidence.**

Plaintiffs, claiming grain under mortgage by defendant A., of "my undivided interest in all crops," making it incumbent on them to show extent of A's interest, regardless of other mortgages on it, they are not in a position to complain that defendant and intervener bank, the latter claiming under a mortgage from A., were permitted to show that mortgagor's wife owned half of the crop, though, as to the bank, this was immaterial in view of its pleadings admitting ownership of crops in mortgagor.

3.   **Chattel Mortgage—Priority—Knowledge—Reformation Against Parties Having Knowledge.**

If plaintiffs, when taking a mortgage from A. on crops to be grown on certain land, knew of a mortgage of A. to a bank and that it was intended as one on same crop, their mortgage was subject to the rights of the bank, and the bank's right to have its mortgage reformed to truly describe the land and to foreclose against A., was good as against plaintiffs also.

4.   **Chattel Mortgage—Priorities—Knowledge—Question for Jury.**

Where parties to a mortgage on a crop testified positively, the mortgagor that, when given, he told the mortgagees that another had a mortgage thereon, the mortgagees to the contrary, an issue of fact is thereby presented for the jury.

5.   **Replevin—General Verdict—Value of Property—Effect of Stipulation.**

Although a general verdict in claim and delivery does not, as directed in Sec. 273, Code Civ. Proc., fix the value of the property, or find that defendant and intervener are entitled to its return, yet, where a stipulation of the parties on the

trial fixed such value and recited that it had been sold by plaintiffs on taking possession under the writ and could not be redelivered, thus in effect withdrawing such questions from the jury, the verdict, in favor of defendant and intervener, supports the judgment for the agreed value.

(Opinion filed Oct. 6, 1913.   Rehearing denied November 17, 1913.)

Appeal from Circuit Court, Faulk County.   Hon. J. H. BOT-TUM, Judge.

Action by B. F. Lyons and another against Fred Archer and another, in claim and delivery; the Farmers' State Bank of Rockham intervening.   From a judgment for defendants and intervener, and from an order denying a new trial, plaintiffs appeal.   Affirmed.

*W. F. Bruell,* and *F. E. Snider,* for Appellants.

Each party to an action is in that action conclusively bound by those admissions which he expressly makes in his pleadings. Jones on Evidence, Sec. 276; Commercial Bank of Jackson, 70 N. W. 846 (S. D.)..

Courts should render judgment in accordance with the admissions regardless of the adverse verdict and evidence.   2 Ency. of Law and Procedure, 177; Emerson v. Atwater, 12 Mich. 314; Fletcher v. Nelson, (N. D.) 69 N. W. 54.

The testimony of Archer and wife is all antagonistic to the admitted facts in the pleadings, and constitutes a foreign issue injected in the case solely for the purpose of defeating plaintiffs, and to prejudice the minds of the jury in favor of the wife of the defendant, Archer.

A defendant cannot raise an issue he has closed by admissions in his answer; nor if he admits or avers by his pleading that which establishes plaintiff's right, is he permitted to deny the existence of the fact so admitted or averred, or to prove any state of facts inconsistent therewith.   McLaughlin v. Alexander, 2 S. D. 237; Humphrey v. D. N. Osborne & Co., 2 S. D. 310; Myrick v. Bill, (Dak.) 17 N. W. 268.

The verdict is contrary to the statute, and is insufficient to warrant any judgment for the defendants or intervenor, and the judgment is not warranted or supported by the verdict.   Sec. 273, Code Civil Proc.; Swain v. Roys, 4 Wis. 170; Smith v. Smith, (Ore.) 21 Pac. 439.

Under the pleadings in this case, the intervenor is not entitled to reform his mortgage, even as against Archer; and the intervenor has no right to ask reformation as to a third party.

The general rule is that an instrument will not be reformed, except as between the original parties, or those claiming under them in privity.   Buerner v. Hegman, 110 N. W. 580.

In Reply.

The stipulation submitted to the record shows that the wheat was delivered to the Atlas elevator at Rockham and Zell by Archer, and stored in his name, and that Archer before the bringing of this action, had already sold and appropriated the proceeds of 53½ bushels of wheat of the value of 79 cents per bushel.   It was further stipulated that such portion of the grain as was delivered to the plaintiffs by the sheriff was thereafter sold.   The stipulation was satisfactory to defendants; they knew of the sale; and they evidently either consented to it, or the sale was regular in form.

Plaintiffs claimed same under a mortgage.   The sheriff took the property from the defendants in claim and delivery, and thereafter turned it over to the plaintiffs.

*Sterling & Clark,* and *Frank Turner,* for Respondent.

There was no question of damages, or as to what property was seized by the sheriff and taken from the defendants and turned over to plaintiffs; nor as to the quality or quantity or value of the property.   These matters are fully covered by the stipulation of the parties hereto made during the trial.   There was no possibility of the return of any of this property to the defendants, for the said stipulation expressly shows that all the property was disposed of by the plaintiffs before the trial, and could not possibly be returned.   Towne v. Liedle et al., 10 S. D. 460.

A general verdict (in replevin) is in effect a decision by the jury in favor of the successful party upon all the questions put in issue by the pleadings.   18 Ency. Pl. & Pr., 570; citing Fitzer et al. v. McCannan, 14 Wis. 67 (63); Secs. 273, 313, Code Civ. Proc.

The judgment need not be in the alternative where, from the special circumstances of the case, return is manifestly impossible. 18 Enc. Pl. & Pr., 594; 34 Cyc. 1549.

POLLEY, J.   The plaintiffs, for a cause of action in claim and delivery, allege in their complaint that on the 11th day of March, 1911, the defendant, Fred Archer, to secure certain indebtedness, gave them a chattel mortgage on a crop of wheat to be raised that season on the N. E. ¼ of section 32 and the N. W. ¼ of section 33, in a certain township in Faulk county. That, after the crop had been harvested and threshed, Archer, without plaintiff's consent, delivered the grain to the defendant Atlas Elevator Company. That the debt secured by said chattel mortgage was unpaid. That they had demanded the wheat before the commencement of the action and prayed judgment for the possession of said grain or, in case it could not be delivered, for its value and for damages.

Defendant Archer, in a separate answer to plaintiff's complaint, admitted giving a chattel mortgage on certain personal property to the plaintiffs at the time specified, but denied that the grain in controversy was included therein, alleging that the said wheat had already been mortgaged to the Farmers' State Bank of Rockham, of which fact he informed plaintiffs, and, upon their request for a mortgage on said wheat, he informed them that he could not do so for the reason that the same was already mortgaged to the bank. He also alleged that, at the time he signed plaintiffs' mortgage, it did not contain a description of the grain in question, but that the description thereof was inserted in said mortgage by B. F. Lyons, one of the plaintiffs, after the mortgage had been executed and without said defendant's knowledge or consent.

The Farmers' State Bank of Rockham came into the case as an intervener, and, in its complaint in intervention, alleged that the defendant Archer was indebted to it and that on the 19th day of January, 1911, to secure said indebtedness, gave to it a chattel mortgage on the crop to be sown and grown on the above-mentioned premises during the season of 1911, of which chattel mortgage plaintiffs had actual knowledge at the time of the execution of their mortgage, on the 11th day of March, 1911, but that, by a mutual mistake of both parties to said mortgage, the land was described as the N. W. ¼ of section 32 and the N. E. ¼ of section 33, in said township, describing two quarter sections a mile apart instead of two adjoining quarter sections,

as was intended by said parties. It alleged that the indebtedness was still unpaid; that the grain was delivered to the Atlas Elevator Company, subject to the order of intervener; and prayed judgment that the description of the real property on which the grain was grown be reformed so as to read, the N. E. ¼ of section 32 and the N. W. ¼ of section 33; and that it have judgment for possession of the said grain.

Plaintiffs answered the bank's complaint in intervention, denying the validity of the bank's mortgage and denying that, at the time they took their mortgage, they had knowledge, actual or constructive, of the bank's mortgage, also pleading other defenses to the claims of the bank. But, as such defenses are not argued in plaintiff's brief, they will be treated as abandoned and will receive no further notice.

During the course of the trial, the parties entered into a stipulation in open court to the effect that the plaintiffs, at the beginning of the action, had given an undertaking in claim and delivery and taken immediate possession of the wheat. The amount and value of the wheat was agreed upon by the terms of the said stipulation and also the fact that, before the trial, the plaintiffs had sold said grain and that it could not be redelivered under any circumstances,—virtually changing the form of the action from one for the recovery of possession of the grain to one for a recovery of the value thereof as fixed by the parties themselves. The jury returned a general verdict in favor of the defendant and the intervener on all the issues. Upon this verdict and the said stipulation, which was set out *verbatim* in the judgment, the court entered judgment in favor of the defendant and intervener and against the plaintiffs for the agreed value of the wheat that had been taken and sold by plaintiffs. Motion by plaintiffs for a new trial was overruled, and they appeal.

[1, 2] Plaintiffs have assigned and in their brief argue numerous alleged errors committed by the trial court. These we have carefully examined, but, in the view we take of the case, it will not be necessary to consider them in detail. Numerous exceptions were taken by the appellants to the admission of evidence by the court, and much of the evidence so admitted was immaterial to any of the issues raised by the pleadings in the case, was incompetent for any purpose whatever, and should have been excluded

by the court. Yet it was harmless, as to the appellants, and does not constitute reversible error. The defendant and intervener were permitted, over the objection of the plaintiffs, to show that the wife of the mortgagor was the owner of one-half of the crops described in the mortgage. This was wholly immaterial, so far as the mortgage to the bank was concerned, because it was alleged and admitted by the pleadings that the mortgaged crop belonged to the mortgagor, but the plaintiffs are not in position to complain of this, because in their mortgage the mortgagor only assumed to mortgage "my undivided interest of all the crops of every kind," etc. So that it was incumbent upon the plaintiffs to show the extent of Archer's interest in the crop, whether there was any other mortgage or not.

[3, 4] The mortgage to the bank described the land on which the mortgaged crop was to be grown as the N. E. ¼ of section 33 and the N. W. ¼ of section 32. The evidence showed that the mortgagor's wife owned, and that she and the mortgagor resided upon and farmed, the N. E. ¼ of section 32 and the N. W. ¼ of section 33. The mortgagor did not own either of the quarter sections described in the bank's mortgage, nor did he occupy or farm either of them. The evidence also showed that the cashier of the bank, who represented the bank in securing the mortgage in question, knew that the mortgagor's wife owned, and that she and the mortgagor resided upon and farmed, the N. E. ¼ of section 32 and the N. W. ¼ of section 33, and that he also knew that Archer did not own, nor occupy, nor farm either of the other two tracts of land. Both the mortgagor and the cashier of the bank testified that they intended that the mortgage should describe the crop to be grown on the N. E. ¼ of section 32 and the N. W. ¼ of section 33, but that by a mutual mistake the numbers 32 and 33 became interchanged so that it read the N. E. ¼ of section 33 and the N. W. ¼ of section 32. The facts and circumstances under which this mistake occurred were such that, as against the mortgagor, the mortgagee was entitled to have the mortgage reformed so as to express the real intent of the parties thereto. Whether or not the bank would have this right as against the plaintiffs' mortgage depends upon what knowledge, if any, plaintiffs had of the bank's mortgage when they took theirs. If they knew the bank had a mortgage on this crop of grain

when they took their mortgage, then their rights were subject to the rights of the bank. The fact that there was a mistake in the description of the land on which the grain was to be grown would be immaterial, so long as it was sufficient to constitute a lien on the crop as between Archer and the bank, and the plaintiffs had knowledge of it and that it was intended as a mortgage on the crop to be grown on the land described in their mortgage. In other words, if plaintiffs had knowledge of the bank's mortgage and that it was intended as a mortgage on the crop to be grown on the land described in their mortgage, then they took their mortgage subject to the rights of the bank; and, the bank having the right to have its mortgage reformed and foreclosed as against Archer, it had the same right as against the plaintiffs. The plaintiffs testified positively that nothing was said by Archer about the bank's mortgage at the time they took their mortgage, while Archer testified just as positively that he told plaintiffs at the time he executed their mortgage, that he bank had a mortgage on this crop. This presented an issue of the fact for the jury, and it was submitted to the jury under the following instruction by the court: "The court advises the jury that, if the jury find that Archer did, in fact, give the plaintiff a mortgage upon said grain and there was no actual notice given them, at the time of the taking of the mortgage, of any other claim to the crop, then you must find for the plaintiffs. * * * And therefore, unless you find that Archer did make that statement, you cannot find that the plaintiffs had any notice of the existence of this mortgage to the bank or of the rights of the bank. And they would have no such notice as would put them on inquiry if no such statements were made by Archer." This instruction is as favorable to plaintiffs as the facts will warrant, and, the jury having found against them, they are in no position to complain. We have examined the evidence brought up by the record and are satisfied it is amply sufficient to support the verdict.

[5] The jury returned a general verdict in favor of the defendant and the intervener. This, plaintiffs contend, is not a sufficient verdict to support the judgment and does not comply with the provisions of section 273 of the Code of Civil Procedure in that it does not fix the value of the property or that defendant and intervener were entitled to a return thereof. There

might be much force to this contention were it not for the stipulation entered into by the parties during the trial and hereinbefore referred to. By this stipulation the parties themselves agreed upon the value of the property, and also that it had been sold by plaintiff and could not be returned under any circumstances. This amounted to a withdrawal of these two questions from the jury and left nothing for them to pass upon.

Finding no prejudicial error in the record, the judgment and order appealed from are affirmed.